UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FLOWERS, INC. d/b/a burton + BURTON,® | ) ) ) ) | CASE NO. 5:24-cv-590 |
| Plaintiff, | ) ) ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| SPRINGHILL FLORAL & GIFT SUPPLY CO. d/b/a DIRECTFLORAL, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

Before the Court are the parties' dueling motions for summary judgment. Plaintiff Flowers, Inc. d/b/a burton + BURTON® ("Flowers") moves for partial summary judgment in its favor on its claims against defendants Springhill Floral & Gift Supply Co. d/b/a DIRECTFLORAL ("DirectFloral") and The New Diamond Line Container Corp. d/b/a DIAMOND LINE CONTAINERS ("Diamond Line Containers") (collectively "defendants"). (Doc. No. 36 (Flowers's Motion for Partial Summary Judgment).) Defendants similarly move for summary judgment in their favor. (Doc. Nos. 35 (Defendants' Motion for Summary Judgment), 35-1 (Defendant's Brief in Support).) Both motions are fully briefed. (Doc. Nos. 41–42, 46, 49.) For the reasons set forth below, both motions are denied.

I. **BACKGROUND**

The basic facts of this case appear uncontroversial. Flowers designs, markets, and sells gifts and holiday products. (Doc. No. 1 (Complaint) ¶ 8.) Defendants are two related companies

that manufacture, import, and sell goods to florists. (Doc. No. 37-1 (Louis Depo.), at 15:2–16[1], 22–24.) Non-party Fuzhou Yaoyi Arts and Crafts Co., Ltd. ("Fuzhou") is a China-based manufacturer (Doc. No. 38-1 (Dillon Depo.), at 16:16–18) that does business with both Flowers and defendants. (Doc. No. 38-1, at 16:18–23, 17:3–11; Doc. No. 35-5 (Louis Decl.) ¶ 6.)

As part of its business, Flowers creates and licenses visual designs. (Doc. No. 1 ¶ 9.) The parties do not contest that, at all relevant times, Flowers owned the copyrights for the following designs ("the Designs"):



**9742305 Vintage Christmas Nested Tin Containers**



**0494 Crimson Cardinal**



**2022 Halloween Jack O Lantern Trio**





**WDS 2306 Fall Groupings**

---

[1] Because the parties have filed the transcripts of the depositions, or portions of the transcripts, at various places throughout the record, the Court will use the page number assigned by the court reporter when citing these documents. All other page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.



**WDS 2325 Christmas Icon Trees**



**WDS 2324 Christmas Icons Sleigh**



**WDS 2323 Christmas Icons Wreath**



**WDS 2320 Cardinal**



**WDS 2161 Sunflower**



**WDS 2161 Pumpkin**

(*Id.* ¶¶ 27–96; Doc. No. 36-1 (Dillon Aff.) ¶¶ 3–17.)

3

Flowers often provides Fuzhou with designs to produce products bearing its designs for Flowers's purchase. (Doc. No. 38-1, at 16:19–23, 17:3–11.) In the instant case, Flowers sent the Designs to Fuzhou through various emails along with requests that Fuzhou prepare sample products bearing the Designs. (*See* Doc. No. 35-3, at 1–37.) As Flowers emphasizes, each transmission of the Designs to Fuzhou was accompanied by copyright notices noting "All Rights Reserved[.]" (*Id.*) Once the products were satisfactory, Flowers issued purchase orders for the products bearing the Designs. (*Id.* at 38–108.) Beyond the emails and purchase orders, there were no other written contracts to effectuate these transactions. (Doc. No. 38-1, at 18:8–18.)

Sometime after selling to Flowers, Fuzhou reached out to defendants, with whom it had an established business relationship (Doc. No. 35-5 ¶ 6), and offered to sell them certain products ("the Products"). (*Id.* ¶ 7.) Defendants purchased these Products from Fuzhou, received them, marketed them, and distributed them within the United States. (*Id.* ¶ 8.) Each of the Products bore "at least one of the copyrighted works [the Designs.]" (*Id.* ¶ 5.) Defendants began importing these Products sometime on or around January 13, 2022. (Doc No. 35-6, at 2.)

On April 1, 2024, Flowers filed its complaint in this action. (Doc. No. 1.) Flowers brought ten counts of copyright infringement, one count for each of the Designs, against both defendants. (*Id.* ¶¶ 27–96.) The complaint seeks damages, costs, attorneys' fees, an accounting, and injunctive relief. (*Id.* at 32.) On June 6, 2024, defendants answered. (Doc. No. 8.) On June 24, 2024, defendants amended their answer. (Doc. No. 11.) Discovery closed on May 12, 2025.

All parties now move for summary judgment. Flowers moves for partial summary judgment on liability and minimum damages on all counts but seeks a hearing to establish further damages. (*See generally* Doc. No. 36.) In brief, Flowers argues that there is no factual dispute as to whether Flowers held a copyright for each of the Designs and whether defendants imported,

4

marketed, and distributed products bearing the Designs. (*See generally id.*) Defendants move for summary judgment on all counts. (*See generally* Doc. No. 35.) Defendants argue that Flowers can establish neither a volitional act of copying nor that any products bearing the Designs were unlawfully made by Fuzhou such that defendants' first-sale defense would not apply. (*See generally id.*)

## II. LEGAL STANDARD

The standard for summary judgment motions does not change when, as here, there are dueling motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citation omitted).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quotation marks and citations omitted).

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991) (citation omitted). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio*

6

*State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988))).

### III. DISCUSSION

#### A. Flowers's Motion for Partial Summary Judgment

Flowers argues that there is no dispute as to the prima facie elements of its ten copyright infringement claims. Copyright owners enjoy certain exclusive rights under the Copyright Act, including the right to create, distribute, and display copies of their copyrighted work. *See* 17 U.S.C. § 106. One who infringes upon these exclusive rights by creating, distributing, and/or displaying a copy of a copyrighted work without the copyright owner's authorization is liable for damages. *See* 17 U.S.C. §§ 501, 504. To establish a claim for copyright infringement, a plaintiff must establish "that he or she owns [a] copyrighted creation" and "that the defendant copied it." *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 499 (6th Cir. 2022) (quotation marks and citation omitted). Further, on a theory of direct copyright infringement, the plaintiff must establish some "volitional conduct" by the alleged infringer. *Stokes v. Brinor, Inc.*, 683 F. Supp. 3d 713, 723 (N.D. Ohio 2023) (citation omitted).

##### 1. Copyright Ownership

Flowers asserts that there is no dispute as to its ownership of the relevant copyrights. (Doc. No. 36, at 7.) The Copyright Act protects one's interest in "original works of authorship." 17 U.S.C. § 102(a). The Act also provides that a copyright owner may transfer ownership of that

copyright via, *inter alia*, an exclusive license. 17 U.S.C. § 101. Thus, plaintiffs can establish copyright ownership by establishing, *inter alia*, that they are the original author of the purportedly copyrighted work and have not transferred their interest in the work or that the previous owner of the copyright transferred ownership to them.

Here, Flowers submits evidence that each of the Designs was either originally created by its in-house artists or exclusively licensed to it from the original creator. (Doc. No. 38-1, at 22:2–11, 25:15–16, 29:13–17, 36:2–13, 37:1–6, 39:11–18, 41:11–15, 43:6–10, 43:24–44:4, 46:15–21; Doc. No. 36-2 (Wenke Aff.).) Flowers further submits evidence of registered copyrights for each of the Designs. (Doc. Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 36-1, 36-2.) Defendants do not dispute Flowers's ownership. (Doc. No. 42, at 8.) There is no dispute of material fact as to Flowers's ownership of the copyrights for each of the Designs.

      2.    *Copying*

Flowers next argues that there is no dispute that defendants copied its Designs. "Direct evidence of copying is rare, so frequently the plaintiff will attempt to establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) substantial similarity between the two works at issue." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) (citations omitted).

"Access is essentially hearing or having reasonable opportunity to view the plaintiff's work and thus having the opportunity to copy." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (alterations and quotation marks omitted). "Although 'evidence that a third party with whom both the plaintiff and defendant were concurrently dealing had possession of plaintiff's work is sufficient to establish access by the defendant,' '[a]ccess may not be inferred through mere

8

speculation or conjecture.'" *Murray Hill Publ'n, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (quoting *Ellis*, 177 F.3d at 506 (alteration in original)).

Substantial similarity is normally a factual issue ill-suited to resolution on a summary judgment motion. *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009). However, substantial similarity can be established on summary judgment when the defendants do not dispute their copying of the plaintiff's copyrighted works. *See Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 62 (1st Cir. 2000) (affirming summary judgment for plaintiff where undisputed testimony of defendant's designer indicated that she bought original works and sent them to overseas manufacturer for use as models for defendant's sweaters); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (affirming summary judgment for plaintiff where "undisputed direct evidence" showed that defendant gave explicit instruction to copy plaintiff's work).

Here, the record indicates that defendants had access to the Designs through Fuzhou. Email correspondence show that Flowers sent Fuzhou the Designs. (*See* Doc. No. 35-3, at 2–37.) Defendants' vice president Jacque Sir Louis represents that defendants "have a history of purchasing products from Fuzhou[.]" (Doc. No. 42-3 ¶ 6.) Indeed, Louis states that defendants received the Products from Fuzhou each of which bore "at least one of the copyrighted works[.]") (*Id.* ¶¶ 5, 8.) Further, email correspondence between Louis and representatives from Kirin House, an affiliate of Fuzhou, suggest defendants' receipt of Flowers's Designs from Fuzhou. (Doc. No. 37-50, at 1 ("[c]learly, all of these designs are supplied by Burton and Burton[.]").) Defendants provide no evidence to dispute these facts. Thus, there is no dispute of fact as to whether defendants had access to the Designs.

Next, Flowers provides evidence that the Products defendants marketed and distributed bore artwork that was at least substantially similar to the Designs. Flowers points to pages from

defendants' catalogs in which it appears that defendants advertise products bearing all ten of the Designs. (Doc. No. 36-15, at 3–7; Doc. No. 36-16, at 3–5; Doc. No. 36-17, at 3, Doc. No. 36-18, at 4.) Further, Louis concedes that defendants purchased, received, marketed, and distributed the Products each bearing "at least one of the copyrighted works[.]" (Doc. No. 42-3 ¶¶ 5, 8.) Defendants do not appear to dispute that the Products bore Flowers's Designs. Thus, there is no dispute of material fact as to whether defendants marketed and distributed products bearing artwork substantially similar to the Designs.

### 3. Volitional Conduct

Despite these undisputed facts, defendants argue that Flowers fails to establish sufficient volitional conduct. (Doc. No. 42, at 8–10.) "Liability for direct infringement … requires volitional conduct by the alleged infringer." *Stokes*, 683 F. Supp. 3d at 723.[2] However, "volitional" must not be mistaken for "intentional" or "knowing." The volitional conduct requirement does not change that copyright infringement is a strict liability claim. *See id.* at 724 ("[A]s a strict liability offense, lack of knowledge is no defense [to copyright infringement].") Rather, the volitional conduct requirement merely requires "conduct that can reasonably be described as the direct cause of the infringement." *Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*, No. 3:16-cv-3294, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)).

Here, the undisputed evidence shows conduct that directly caused the alleged infringement. Defendants' vice president states that defendants purchased, received, marketed, and distributed

---

[2] Flowers argues that "[v]olition is not required for [d]efendants to be liable for copyright infringement." (Doc. No. 41, at 9.) While the Sixth Circuit has not explicitly adopted it, "several district courts within the Sixth Circuit have adopted the volitional conduct requirement." *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 576 (E.D. Mich. 2024) (collecting cases). Indeed, at least one court within the Northern District of Ohio has adopted the requirement. *See Stokes*, 683 F. Supp. 3d at 723. Consistent with this trend within the Sixth Circuit, this Court applies the volitional conduct requirement.

Products bearing the Designs. (Doc. No. 42-3 ¶¶ 5, 8.) Flowers points to pages from defendants' catalogs in which defendants advertise products bearing all ten of the Designs. (Doc. No. 36-15, at 3–7; Doc. No. 36-16, at 3–5; Doc. No. 36-17, at 3; Doc. No. 36-18, at 4.) These facts, undisputed by defendants, establish conduct that can reasonably be described as the direct cause of the alleged infringement of Flowers's exclusive right "to distribute copies … of the copyrighted work[.]" 17 U.S.C. § 106. With this evidence, Flowers satisfies the volitional conduct requirement. *Cf. Stokes*, 683 F. Supp. 3d at 724 (display of copyrighted work considered sufficient volitional conduct).

The case law defendants cite in their support is readily distinguishable. (Doc. No. 42, at 8–9 (citing *Religious Tech. Ctr. v. Netcom On-Line Comm'cn. Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) *cert. denied*, 129 S. Ct. 2890 (2009); *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004); *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017)).) In each case, a third party used a product or service provided by the defendant to copy and/or distribute copyrighted material.[3] In each case, the defendant's involvement in the alleged infringement was passive and largely automated.[4] In each case, the court required that the defendant's conduct be more than passive or automatic.[5]

---

[3] *See Religious Tech. Ctr.*, 907 F. Supp. at 1368 (third party sent copyrighted material using defendants communication services); *BWP Media USA, Inc.*, 852 F.3d at 438 (third party posted copyrighted images on defendant's online public forum); *Cartoon Network LP, LLLP*, 536 F.3d at 124 (defendant sold technology allowing third parties to record cable programing); *Parker*, 242 F. App'x at 835 (third party posted copyrighted work in online forum that defendant's search engine then allowed users to find and access); *CoStar Grp., Inc.*, 373 F.3d at 547 (third party used defendant's webhosting service to post copies of copyrighted photographs).

[4] *See Religious Tech. Ctr.*, 907 F. Supp. at 1367; *BWP Media USA, Inc.*, 852 F.3d at 442; *Cartoon Network LP, LLLP*, 536 F.3d at 131; *Parker*, 242 F. App'x at 834; *CoStar Grp., Inc.*, 373 F.3d at 556.

[5] *See Religious Tech. Ctr.*, 907 F. Supp. at 1373; *BWP Media USA, Inc.*, 852 F.3d at 442; *Cartoon Network LP, LLLP*, 536 F.3d at 132; *Parker*, 242 F. App'x at 837; *CoStar Grp., Inc.*, 373 F.3d at 556.

Here, the undisputed facts show defendants' non-passive and non-automatic involvement in the alleged infringement of Flowers's copyrights. As discussed above, the undisputed facts show defendants purchasing, receiving, marketing, and distributing Products bearing the Designs. Defendants thus fail to raise a genuine dispute of fact regarding defendants' volitional conduct.

Flowers successfully establishes that there is no dispute of material fact regarding the prima facie elements of its copyright infringement claims.

### 4. *First Sale Defense*

Defendants raise their affirmative defense under the first sale doctrine.[6] Under the first sale doctrine "the owner of a particular copy or phonorecord lawfully made under this title . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." 17 U.S.C. § 109(a).

The parties dispute whether the Products were "lawfully made" for purposes of the first sale doctrine. Whether a copy is "lawfully made" often turns on whether the copy was made in compliance with a license. *See e.g., Bourne v. Walt Disney Co.*, 68 F.3d 621, 632 (2d Cir. 1995) (copies made pursuant to license considered lawfully made); *Capitani v. World of Miniature Bears, Inc.*, No. 3:19-cv-120, 2020 WL 4805729, at *2 (M.D. Tenn. Aug. 18, 2020) (denying summary judgment where dispute existed as to whether copies were lawfully made pursuant to license).

A non-exclusive license authorizes the licensee to use a copyrighted work in a particular manner. *See OverDrive, Inc. v. Open eBook F.*, No. 1:17-cv-165, 2017 WL 11367906, at *5 (N.D. Ohio Dec. 5, 2017). "[A] non-exclusive license may be granted orally, or may be implied from

---

[6] While defendants typically bear the burden of establishing their affirmative defenses, on a motion for summary judgment, the movant has the initial burden of showing that there is no dispute of material fact. *See Blankenship v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, No. 3:19-cv-146, 2021 WL 3037485, at *6 (M.D. Tenn. July 19, 2021). If the movant meets that burden, the non-movant must then put forth evidence demonstrating a genuine issue of material fact as to the affirmative defense. *See id.*

conduct." *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998) (citations omitted). "Implied licenses [to use a copyrighted work] may be limited[,] and a [licensee] who exceeds the scope of an implied license commits copyright infringement." *Whitehardt, Inc. v. McKernan*, No. 3:15-cv-1307, 2016 WL 4091626, at *11 (M.D. Tenn. Aug. 2, 2016) (quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) (first alteration in original)).

Flowers argues that the Products were not lawfully made. (Doc. No. 49, at 6.) Flowers's chief executive officer, Rachel Dillon, states that Flowers provided Fuzhou with the Designs for the exclusive purpose of producing products for Flowers (Doc. No. 38-1, at 41:21–25) and that these expectations were communicated to Fuzhou at the "Canton Fair." (*Id.* at 42:1–20.) Further, an email from Dilys Lin, sales manager at Fuzhou, to Louis at Diamond Line Containers states, "[w]e never sign [sic] any paper agreement with Burton+Burten.But [sic] to be honest,when [sic] we meet in the fair or in my factory,I [sic] agreed with her that I would not pass their artworks to other customers."[7] (Doc. No. 37-47, at 1 (spacing in original).) With this evidence, Flowers argues that it has established that Fuzhou's use of the Designs was limited to providing Flowers with products. Defendants point to nothing rebutting the possibility of an oral agreement restricting Fuzhou's use of the Designs, electing instead to focus on the lack of a writing. (Doc. No. 42, at 6.)

This evidence does appear to establish, as a matter of law, an oral license restricting Fuzhou's ability to use the Designs for any purpose other than to provide Flowers with products that incorporate the Designs. But Flowers fails to point the Court to any evidence on *when* the Canton Fair was or *when* this oral agreement was entered into. If the Products bearing the Designs were received by defendants when the license limitation was in effect, then the Products would be

---

[7] The Court recognizes that this email potentially constitutes hearsay evidence. However, it is likely admissible under Fed. R. Evid. 807, which provides for the admissibility of hearsay evidence that "is supported by sufficient guarantees of trustworthiness" and "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed R. Evid. 807.

13

unlawfully made. Without this information, though, the Court cannot say as a matter of law that the Products were unlawfully made. Because the temporal scope of any limitations on Fuzhou's use of the Designs affects whether the Products where lawfully made, this represents a genuine dispute of material fact. *See Capitani*, 2020 WL 4805729, at *2 (denying summary judgment where dispute of fact existed as to whether copies of copyrighted work were manufactured when relevant license was in effect).

In light of this genuine dispute of material fact, Flowers's motion for summary judgment on liability is denied. Because the Court denies Flowers summary judgment on liability, it also denies Flowers's request for summary judgment on damages.

### B. Defendants' Motion for Summary Judgment

Defendants' summary judgment motion likewise fails. On their own motion, defendants raise three arguments: (1) Flowers fails to establish an exclusive license between Flowers and Fuzhou (Doc. No. 46, at 7–12), (2) Flowers cannot put forth evidence of defendants' volitional conduct (Doc. No. 35-1, at 8–10; Doc. No. 46, at 12–15), and (3) Flowers cannot put forth evidence that the Products were unlawfully made and thus not subject to the first sale doctrine. (Doc. No. 35-1, at 12–13; Doc. No. 46, at 15–16.)

#### 1. *Exclusive License*

Defendants argue that Flowers fails to put forth any evidence that it had an exclusive license with Fuzhou, and that defendants are resultantly entitled to judgment as a matter of law. (Doc. No. 46, at 7–12.) In essence, defendants argue that an exclusive license and any restrictions therein require a writing, and because Flowers failed to execute a writing with Fuzhou, it failed to place any restrictions on Fuzhou's use of the Designs. (Doc. No. 46, at 11–12.) Defendants' argument fails because they fail to address the possibility of a limited, non-exclusive license.

14

An exclusive license is a type of conveyance of copyright ownership. 17 U.S.C. § 101. As a conveyance of copyright ownership, an exclusive license must be in writing. 17 U.S.C. § 204(a). However, a non-exclusive license is not a transfer of copyright ownership. 17 U.S.C. § 101. "Rather[,] a non-exclusive license merely permits the use of the copyright in a particular manner." *OverDrive, Inc.*, 2017 WL 11367906, at *5 (citations and quotation marks omitted). As discussed above (*see supra* § III(A)(4)), a non-exclusive license and any restrictions contained therein may be made orally or implied from conduct. *See Johnson*, 149 F.3d at 500; *Whitehardt, Inc.*, 2016 WL 4091626, at *11.

Defendants construe Flowers to argue that it had an exclusive license with Fuzhou (Doc. No. 46, at 9), but that is not the case. Rather, Flowers argues that it only authorized Fuzhou to use the Designs for the exclusive purpose of producing goods for Flowers. (Doc. No. 41, at 2, 6–7.) Thus, while defendants are correct that the lack of any writing prevents Flowers from establishing that it exclusively licensed the Designs to Fuzhou, it fails to rule out the possibility of a non-exclusive license limiting Fuzhou's use of the Designs to the production of products for Flowers exclusively. Indeed, the Court has already ruled that a genuine dispute of material fact exists as to whether such a non-exclusive, oral license was in effect. (*Supra* § III(A)(4).) Defendants, therefore, fail to meet their burden on this issue.

    2.    *Volitional Conduct*

Defendants next argue that Flowers can produce no evidence of defendants' volitional conduct. (Doc. No. 35-1, at 9–10.) As discussed above (*supra* § III(A)(3)), the volitional conduct requirement only requires "conduct that can reasonably be described as the direct cause of the

15

infringement." *Average Joe's Ent. Grp., LLC*, 2018 WL 6582829, at *2 (quoting *Perfect 10, Inc.*, 847 F.3d at 666)).

Defendants argue that Flowers fails to establish volitional conduct because the Products bearing the Designs were manufactured by Fuzhou, and defendants only purchased the Products from Fuzhou. (Doc. No. 35-1, at 9–10.) But the undisputed facts show that defendants purchased, received, marketed, and distributed Products bearing the Designs. (*See supra* § III(A)(3).) Such conduct is volitional as it directly caused the alleged infringement of Flowers's exclusive right to distribute copies of its copyrighted works. *See* 17 U.S.C. § 106. As the Court already decided (*see supra* § III(A)(3)), there is no genuine dispute that defendants took part in volitional conduct. Defendants' summary judgment motion thus fails on this issue.

### 3. First Sale Doctrine

Defendants next argue that they are protected by the first sale doctrine. (Doc. No. 35-1, at 12–13; Doc. No. 46, at 15–16.) The owner of a copy of a copyrighted work is protected under the first sale doctrine, provided that the copy was lawfully made. *See Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 750 (S.D. Ohio 2021).

Defendants argue that Flowers transferred its Designs to Fuzhou without any written restrictions on Fuzhou's use of the Designs. (Doc. No. 46, at 15.) Absent such written restrictions, defendants urge, Fuzhou was free to make the Products bearing the Designs and sell them to defendants. (Doc. No. 46, at 16.) Thus, according to defendants, the Products were lawfully made, and defendants could dispose of them as they wished under the first sale doctrine. (*Id*. at 16.)

However, as discussed above (*supra* §§ III(A)(4), III(B)(1)), a non-exclusive license need not be in writing. A non-exclusive license, and any limitations contained therein, may be made orally or implied from conduct. *See Johnson*, 149 F.3d at 500; *Whitehardt, Inc.*, 2016 WL 4091626,

16

at *11 (citation omitted). Thus, despite the absence of any written license, there may still exist an implied or oral license containing restrictions on the use of a copyrighted work.

Flowers successfully raises a genuine dispute of material fact as to whether the Products were lawfully made. As discussed above (*supra* § III(A)(4)), Flowers puts forth sufficient evidence from which a reasonable jury could find that Flowers granted Fuzhou a limited license to use the Designs for the sole purpose of creating products for Flowers. If such a license were in effect at the relevant time, the Products would not be lawfully made, and defendants would not be protected by the first sale doctrine. Defendants thus fail to meet their burden on their summary judgment motion.

## IV. CONCLUSION

Neither Flowers nor defendants establish the absence of a genuine dispute of material fact in this case. Accordingly, both Flowers's motion for partial summary judgment (Doc. No. 36) and defendants' motion for summary judgment (Doc. No. 35) are DENIED.

**IT IS SO ORDERED**.

Dated: October 27, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**